The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jon C. LYBARGER, Defendant–Appellant.

No. 86CA0119.

Colorado Court of Appeals, Div. A.

Oct. 19, 1989.

Rehearing Denied Nov. 16, 1989.

Certiorari Granted April 16, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and John Daniel Dailey, Deputy Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, and Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

Hamilton, Myer, Swanson, Faatz & Clark, Dwight A. Hamilton and Jan E. Montgomery, Denver, for amicus curiae The Church of Christ, Scientist.

Opinion by Judge KELLY.

The defendant, Jon Lybarger, appeals from the judgment entered on a jury verdict finding him guilty of child abuse resulting in death. We affirm.

On March 15, 1982, the defendant's five-week-old daughter died of severe pneumonia. She had been sick for some time, but the defendant, in accordance with his religious beliefs, had not sought medical care for her.

He was charged by information with violating Colo.Sess.Laws 1980, ch. 93, § 18–6–401(1)(b), at 544 (conduct that "may endanger" a child's life or health). Prior to trial, the defendant informed the prosecution and the court that he intended to assert the affirmative defense of treatment through spiritual means as provided in § 18–6–401(6), C.R.S. (1988 Cum.Supp.) and § 19–1–114, C.R.S. (1986 Repl.Vol. 8B) (now codified as § 19–3–103, C.R.S. (1988 Cum.Supp.)).

The trial court, *sua sponte*, held that the spiritual-treatment affirmative defense violated the establishment clauses of the First Amendment and Colo. Const. art. II, § 4. Consequently, it refused to admit any evidence of the defendant's religious practices as a defense to the charge. The defendant was ultimately found guilty by a jury.

The Supreme Court reversed the conviction because: "[t]he court's ruling, in addition to resolving a constitutional question not raised by any party to the litigation, deprived the defendant of any opportunity to present evidence at trial that might have entitled him to an appropriate jury instruction on the statutory defense created by section 18–6–401(6)...." *People v. Lybarger*, 700 P.2d 910 (Colo.1985). The case was remanded for a new trial.

At the close of the second trial, the defendant tendered an instruction that omitted part of the statutory language of the spiritual-treatment affirmative defense, which language he argued was unconstitutional. The instruction was refused because the trial court found that the language complained of was not severable from the remainder of the defense. The trial court also refused the defendant's tendered instructions defining the phrases "recognized church or religious denomination" and "duly accredited practitioner" because it considered them misleading.

The jury was instructed on the spiritual-treatment affirmative defense in the language of the statute. The defendant was found guilty of the offense set out in Colo. Sess.Laws 1980, ch. 93, § 18–6–401(1)(a), at 544 (conduct that "endangers" a child's life or health). He was sentenced to six years' probation, with eight hours per week of public service.

I.

The defendant contends that he was tried under an information that was miss-

ing an essential element of the charge because it failed to allege that he had a duty to act and to specify the source of such a duty. Thus, he argues, the trial court was without jurisdiction to try him.

We rejected this argument in *People v. Arevalo*, 725 P.2d 41 (Colo.App.1986) saying: "Section 18–6–401 ... depends on no source of duty." The defendant urges us to depart from the *Arevalo* ruling because it is inconsistent with *People v. Mann*, 646 P.2d 352 (Colo.1982). We disagree that there is an inconsistency.

■ In *People v. Mann, supra,* the Supreme Court approved an instruction outlining the parental duty to provide medical care for one's children because the instruction set out a standard of care against which the jury could judge whether defendant was criminally negligent under § 18–6–401, C.R.S. (1986 Repl.Vol. 8B). Contrary to the defendant's argument, this parental standard of care is not a statutorily-imposed duty upon which § 18–6–401 depends. Rather, the standard of care enlightens the jury concerning the question whether the defendant had the requisite culpable mental state.

Section 18–6–401 derives its force not from a statutory duty but from the obligation of every person to refrain from conduct which endangers a child's life or health. *See People v. Arevalo, supra.* Thus, an information pursuant to § 18–6–401 need not allege a duty to act on the part of the accused.

■ Ordinarily, an information framed in the words of the statute is sufficient. *People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 (1977). An information is sufficient if it advises the accused of the charge against him so that he can prepare an adequate defense. *People v. Chavez*, 730 P.2d 321 (Colo.1986).

Here, the amended information alleged that the defendant "did unlawfully, feloniously, recklessly and through criminal negligence, and without justifiable excuse, cause and permit JESSICA ANN LYBARGER, a child age five weeks, to be placed in a situation that endangered the said child's life and health, and the death of JESSICA ANN LYBARGER resulted...."

This is in substantially the same words as § 18–6–401(1)(a). The defendant does not contend, nor would the record support a contention, that he was unable to prepare a defense against the charge of child abuse. Under these circumstances, the information was not jurisdictionally deficient.

## II.

The defendant argues that the trial court made two errors in the jury selection process which deprived him of his right to a fair and impartial jury. We perceive no error.

### A.

■ First, the defendant contends that the trial court erred by denying his challenge for cause to a potential juror. We do not agree.

■ Absent an abuse of discretion, a trial court's denial of a challenge for cause will not be reversed. *People v. Abbott*, 690 P.2d 1263 (Colo.1984). If the trial court is satisfied that the juror will render a fair and impartial verdict based on the evidence and the court's instructions, then the juror need not be excused. *People v. Drake*, 748 P.2d 1237 (Colo.1988).

The potential juror in question here said that she had read about this case at the time the child died and that she might have formed an opinion at that time that a religion which caused a child's death was "bad." However, in response to questioning by the court, she said that she would listen to the evidence presented and apply the court's instructions on the law in reaching a verdict.

In view of the latitude given the trial court in determining credibility, *see People v. Drake, supra,* its decision that this juror did not express an inability to be fair and impartial was not an abuse of discretion.

### B.

The defendant next asserts that the trial court improperly restricted defense coun-

sel's *voir dire* of the prospective jurors. Again, we disagree.

■■ The propriety of questions during *voir dire* is within the discretion of the trial court, and its ruling will not be disturbed ' absent an abuse of that discretion. *People v. Shipman,* 747 P.2d 1 (Colo.App.1987). *Voir dire* may not be used to instruct the jury regarding the law or the defendant's theory of the case. *People v. Shipman, supra.*

The defendant contends that he was prohibited from questioning potential jurors about any religious beliefs which could have affected their attitudes towards his affirmative defense. The trial court disallowed one question because it went to the defendant's theory of the case. However, the record is replete with other questions by defense counsel in this area. We see no prejudicial error in the *voir dire.*

## III.

■ The defendant argues that the trial court erroneously permitted the prosecution to cross-examine him regarding his religious beliefs. This argument is without merit.

The defendant relies on § 13–90–110, C.R.S. (1987 Repl.Vol. 6A), which prohibits questions regarding the religious opinions of a witness, and CRE 610, which disallows evidence of religious beliefs for the purpose of impairing or enhancing the credibility of a witness.

Both § 13–90–110 and CRE 610 evidence a policy that a witness' competency shall not depend on that person's religious beliefs. However, if testimony is probative of something other than the veracity of the witness, that evidence is not inadmissible simply because it involves religious beliefs. *Conrad v. City & County of Denver,* 656 P.2d 662 (Colo.1982).

The questions complained of by the defendant sought information relevant to the affirmative defense asserted by him. The trial court instructed the jury that the defendant's answers could not be considered to determine his credibility. Under these circumstances, the questions were not improper.

## IV.

The defendant contends that he was denied due process because of errors in several jury instructions. We find nothing prejudicial in any of the instructions cited by the defendant.

### A.

■ The defendant challenges the affirmative defense instruction arguing that it incorrectly set forth the affirmative defense of spiritual treatment. We do not agree.

The affirmative defense is provided for in § 18–6–401(6) which reads:

"No child who in good faith is under treatment described in section 19–3–103, C.R.S., shall, for that reason alone, be considered to be abused or endangered as to his health within the purview of this section. This subsection (6) shall be an affirmative defense."

Section 19–3–103 provides:

"[N]o child who in good faith is under treatment solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall, for that reason alone, be considered to have been neglected within the purview of this article."

The trial court added a paragraph to the standard spiritual-treatment affirmative defense instruction, *see COLJI–Crim.* No. 7:43 (1983), which provided:

"[T]he above stated affirmative defense is not available to the Defendant if the People prove beyond a reasonable doubt that under the circumstances the Defendant ... consciously disregarded a substantial and unjustifiable risk of death to Jessica Ann Lybarger if she did not receive available medical care or grossly deviated from a standard of reasonable care in failing to perceive the child's condition and the need for immediate medical attention available to the child."

This language was derived from the Supreme Court's interpretation of the affirmative defense in a dependency and neglect case. *See People in Interest of D.L.E.,* 645 P.2d 271 (Colo.1982).

The defendant argues that the statutory interpretation adopted in a dependency and neglect case cannot be applied in a criminal prosecution because the Criminal Code serves a different purpose than the Children's Code. *See* § 18–1–102, C.R.S. (1986 Repl.Vol. 8B) and § 19–1–102(1), C.R.S. (1986 Repl.Vol. 8B).

This argument ignores the legislative intent, expressed in both the Children's Code and in § 18–6–401, et seq., C.R.S. (1986 Repl.Vol. 8B) of the Criminal Code, of protecting children. The fact that § 18–6–401 provides for criminal sanctions does not negate the legislative intent expressed therein, namely, to protect children. Consequently, the Supreme Court's interpretation of the spiritual-treatment affirmative defense is persuasive in our interpretation of the instruction at issue here. *Cf. People v. Taggart,* 621 P.2d 1375 (Colo.1981) (statutes prohibiting child abuse which are separate from statutes expressed in general terms prohibiting criminally negligent homicide evidence legislative intent to protect children); *People v. Jennings,* 641 P.2d 276 (Colo.1982) (interpretation of criminal child abuse statute with reference to civil termination of parental rights action).

Although treatment through spiritual means does not, in itself, constitute endangerment of a child's health, § 18–6–401(6) and § 19–3–103 do not provide an absolute defense to the charge of child abuse. If there is another reason to find that a child's health has been endangered, such as the failure to obtain medical care necessary to treat a life-threatening condition, treatment through spiritual means is not a defense.

The instruction at issue informed the jury that if the prosecution proved beyond a reasonable doubt that a reason other than spiritual treatment existed to consider the child endangered, then the defendant was not entitled to the benefit of the affirmative defense in § 18–6–401(6). This

was a correct statement of law, and the trial court did not err by giving the instruction.

### B.

The defendant did not object at trial to several instructions which he now argues were erroneous. Consequently, we examine those instructions under the plain error standard. Crim.P. 52(b).

Under such standard, the record must show a reasonable possibility that the allegedly erroneous instruction contributed to the defendant's conviction, *People v. Cowden,* 735 P.2d 199 (Colo.1987), and that it so undermined the basic fairness of the trial as to cast serious doubt on the reliability of the judgment. *Wilson v. People,* 743 P.2d 415 (Colo.1987).

Our reading of the first paragraph of Instruction No. 9, and Instructions No. 4, No. 12, and No. 17 does not persuade us that any of them undermined the fairness of the defendant's trial or contributed to his conviction. Consequently, these instructions were not plainly erroneous.

### C.

■ We do not agree that the trial court erred in giving Instruction No. 14 which referred to the statutory duty of a parent to provide proper medical care for his child's health. This instruction "[gave] the jury the statutory context which makes [§ 18–6–401] intelligible...." *People v. Mann, supra.* Thus, the trial court did not err by instructing the jury in this manner.

### V.

The defendant contends that the trial court erroneously refused to give three of his tendered jury instructions. We do not agree.

Tendered Instruction No. 1 tracked portions of the religious freedom provision of Colo. Const. art. II, § 4. These principles were set forth in Instruction No. 17, rendering this instruction unnecessary. *See People v. Trujillo,* 712 P.2d 1079 (Colo. App.1985).

■ Tendered Instructions No. 5 and No. 7 asked the court to instruct the jury that the court had determined as a matter of law that the defendant was acting "in good faith" and that he was a "duly accredited practitioner of a recognized church or religious denomination." An instruction directing the jury to accept as fact any portion of a witness' testimony would invade the province of the jury. *See People v. Roybal*, 775 P.2d 67 (Colo.App.1989). Accordingly, the denial of these instructions was not error.

## VI.

The defendant asserts that, because of the alleged unconstitutionality of the penalty provisions of Colo.Sess.Laws 1980, ch. 93, §§ 18–6–401(7)(a) and 18–6–401(7)(b), at 544–45, his conviction of, and sentencing for, a class 3 felony cannot stand. We disagree.

The defendant contends that § 18–6–401(7)(b) punishes "knowing" child abuse resulting in death as a class 3 misdemeanor, while § 18–6–401(7)(a) punishes "reckless" or "criminally negligent" child abuse resulting in death as a class 3 felony. Consequently, he continues, equal protection principles dictate that his first conviction, if it had been upheld, could have resulted only in punishment for a class 3 misdemeanor. Citing *People v. Calloway*, 42 Colo.App. 213, 591 P.2d 1346 (1979), he argues that his conviction of a class 3 felony as a result of the retrial deprived him of due process because it placed him in jeopardy of a harsher sentence. We are unpersuaded.

The only conduct punishable as a class 3 misdemeanor under § 18–6–401(7)(b) is conduct that may have endangered, but did not actually endanger, a child's life or health. Conduct that actually causes injury or death to a child is punishable as a class 3 felony. *People v. Schwartz*, 678 P.2d 1000 (Colo.1984).

Here, the defendant's daughter died. Thus, his actions were punishable as a class 3 felony at both his first and second trials. Accordingly, the defendant did not receive a more severe sentence than he could have received after his first conviction.

## VII.

■ As to the sentence he received, the defendant argues that the trial court improperly imposed the condition that he "not put his religious beliefs over on the people" while performing public service during his probationary period. We agree.

■ The primary purpose of probation is rehabilitation of the offender. *People v. Ressin*, 620 P.2d 717 (Colo.1980). The conditions imposed serve the purpose of enhancing the defendant's reintegration to a responsible lifestyle. *People v. Ressin, supra.* They should be reasonably necessary to insure that the defendant leads a law-abiding life. Section 16–11–204(1), C.R.S. (1986 Repl.Vol. 8A).

■ Although the trial court is not prohibited from imposing restrictions other than those listed in § 16–11–204(2), C.R.S. (1986 Repl.Vol. 8A), *see People v. Burleigh*, 727 P.2d 873 (Colo.App.1986), the trial court is not free to impose conditions that are not related to the purposes of probation. *Cf.* § 16–11–204(2)(*l*), C.R.S. (1986 Repl.Vol. 8A).

The restriction imposed here is not necessary to insure that the defendant leads a law-abiding life nor does it enhance his rehabilitation. Thus, the trial court abused its discretion in this area.

## VIII.

We need not reach the defendant's arguments that the statute authorizing the spiritual-treatment affirmative defense is unconstitutional.

As noted above, § 19–3–103 provides, in part:

"[N]o child who in good faith is under treatment solely by spiritual means ... shall, *for that reason alone,* be considered to have been neglected...." (emphasis added)

In *People in Interest of D.L.E., supra,* the Supreme Court said of this language:

"In our view, the meaning of the statutory language, 'for that reason alone,' is quite clear. It allows a finding of dependency and neglect for other 'reasons,' such as where the child's life is in imminent danger, despite any treatment by spiritual means. In other words, a child who is treated solely by spiritual means is not, for that reason alone, dependent or neglected, but if there is an additional reason, such as where the child is deprived of medical care necessary to prevent a life-endangering condition, the child may be adjudicated dependent and neglected under the statutory scheme."

So here, there was evidence from which the jury could find that a reason other than spiritual treatment existed to consider the defendant's child endangered. Thus, the affirmative defense is inapplicable, and the constitutionality of § 19-3-103 is irrelevant.

Also, we do not address the defendant's assertion that the trial court erroneously refused to sever the allegedly unconstitutional portions of the affirmative defense. Since we do not reach the constitutional issues, it is academic whether the challenged portions are severable.

We have considered the defendant's other arguments and conclude they are without merit.

The judgment is affirmed, and the cause is remanded with directions that the illegal probationary condition be deleted from the terms of the sentence.

METZGER and FISCHBACH, JJ., concur.